UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

RICHARD GAYLER,

          Plaintiff,

v.                                           Case No.  5:07-cv-121-Oc-GRJ

MICHAEL J. ASTRUE, Commissioner of Social
Security,

          Defendant.
_____/

## ORDER

Plaintiff appeals from a final decision of the Commissioner of Social Security ("the Commissioner") denying his application for disability insurance benefits and Supplemental Security Income. (Doc. 1.) The Commissioner has answered (Doc. 8), and both parties have filed briefs outlining their respective positions. (Docs. 13 & 16.) For the reasons discussed below, the Commissioner's decision is due to be **REVERSED AND REMANDED** under sentence four of 42 U.S.C. § 405(g).

## I. PROCEDURAL HISTORY

On August 10, 2001, Plaintiff filed an application for a period of disability, disability insurance benefits and supplemental security income, alleging a disability onset date of May 31, 1998, which he subsequently amended to April 18, 2000. (R. 85-87, 551.)  Plaintiff's application was denied initially and upon reconsideration. (R. 46-47, 49-51.)   Thereafter, Plaintiff timely pursued his administrative remedies available before the Commissioner, and requested a hearing before an Administrative Law Judge ("ALJ"). (R. 52.) ALJ Tutera conducted Plaintiff's administrative hearing on June 17,

2004. (R. 236-57.)  The ALJ issued a decision unfavorable to Plaintiff on November 6, 2003.  (R. 38-44.)  Plaintiff's request for review of the hearing decision was granted by the Appeals Council.  (R. 11-14.)  The Appeals Council remanded the case to an ALJ for further proceedings.  (R. 61-64.)  On October 28, 2005, ALJ Walker held a supplemental hearing and on March 9, 2006, issued a decision unfavorable to Plaintiff.  (R. 18-28.)  Plaintiff's request for review of ALJ Walker's decision was denied by the Appeals Council.  (R. 12-14.) Plaintiff then appealed the decision to this Court. (Doc. 1.)

## II. STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[1] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[2]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[3] The district court must view the evidence as a whole, taking

---

[1] See 42 U.S.C. § 405(g).

[2] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); accord, Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[3] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

into account evidence favorable as well as unfavorable to the decision.[4] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[5]   The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[6] The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy.[7]

The ALJ must follow five steps in evaluating a claim of disability.[8] First, if a claimant is working at a substantial gainful activity, she is not disabled.[9] Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does

---

[4] Foote, 67 F.3d at 1560; *accord,* Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

[5] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[6] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.

[7] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[8] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[9] 20 C.F.R. § 404.1520(b).

not have a severe impairment and is not disabled.[10] Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.[11] Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.[12] Fifth, if a claimant's impairments (considering her RFC, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.[13]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[14] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[15] The Commissioner may satisfy this burden by pointing to the grids for a conclusive determination that a claimant is disabled or not disabled.[16]

However, the ALJ should not exclusively rely on the grids when the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when

---

[10] 20 C.F.R. § 404.1520(c).

[11] 20 C.F.R. § 404.1520(d).

[12] 20 C.F.R. § 404.1520(e).

[13] 20 C.F.R. § 404.1520(f).

[14] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987). *See Also* Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

[15] Doughty at 1278 n.2 ("In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.") (*internal citations omitted*).

[16] Walker at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.")

the claimant cannot perform a full range of employment at the appropriate level of exertion.[17] In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[18]

The ALJ may use the grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[19] Such independent evidence may be introduced by a vocational expert's testimony, but this is not the exclusive means of introducing such evidence.[20] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.[21]

## III. SUMMARY OF THE RECORD EVIDENCE

At the time of the hearing, Plaintiff was thirty-six (36) years old. (R. 548.) He attended college for two terms (R. 549) and has previous work experience as a sandwich maker, motel desk clerk, marble maker and shop supervisor, pizza delivery driver, golf course maintenance worker and an apprentice in a tool and die company (R. 113, 554-58.) Plaintiff contends that he has been unable to work since April 18,

---

[17] Phillips v. Barnhart, 357 F. 3d 1232, 1243 (11th Cir. 2004); Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996); Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker at 1003 ("the grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation").

[18] Walker at 1003.

[19] Wolfe at 1077-78.

[20] See id.

[21] See Doughty at 1278 n.2.

5

2000 due to symptoms related to fibromyalgia, osteoarthritis, chronic backpain, restless leg syndrome, insomnia, chronic lower extremity pain, left rotator cuff injury, and other undiagnosed conditions. (R. 112.)

In his review of the record, including Plaintiff's testimony and the medical records from several health care providers, the ALJ determined that Plaintiff suffered from fibromyalgia, adjustment disorder, seizure disorder, anxiety related disorder, osteoarthritis, degenerative disc disease of the cervical and thoracic spine, and chronic back pain. (R. 21.) However, the ALJ determined that Plaintiff did not have an impairment or combination of impairments which met or medically equaled one of the impairments listed in Appendix 1, Subpart P of Social Security Regulation No. 4. (R. 23-25.)

The ALJ then found that Plaintiff retained the RFC to lift up to 10 pounds but found that Plaintiff requires a sit and stand option while at his workstation; must avoid ascending and descending stairs; can perform pushing and pulling with his upper and lower extremities and bilateral manual dexterity for both fine and gross manipulation with handling and reaching; must avoid unprotected heights and hazardous machinery; can occasionally balance, stoop, crouch, kneel, and crawl; due to his mental condition, he is limited to low stress, simple, unskilled work; and he cannot work in the close proximity of coworkers or be exposed to the general public. (R. 25)

In his RFC analysis, the ALJ discounted the opinion of Dr. Stark and Plaintiff's testimony. (R. 25-6.) After finding that Plaintiff could not perform the requirements of her past relevant work, the ALJ relied upon the testimony of a Vocational Expert and found that Plaintiff was not disabled. (R. 26-27.)

Because the instant appeal focuses on the ALJ's decision to discount Dr. Stark's opinion and Plaintiff's testimony, the Court will focus on the evidence relevant to those challenges.

Plaintiff was treated by Kenneth Stark, M.D., a rheumatologist, on at least eighteen occasions from January 1998 until June 2003. (R. 305-47.) Dr. Stark repeatedly diagnosed Plaintiff with fibromyalgia and noted tender fibrositis points, fatigue, paraspinal tenderness, stiffness and non-restorative sleep. (R. 312, 314, 316, 319, 321, 323, 324, 325, 327, 329, 331, 333, 335, 337, 340, 343, 344, 346). Dr. Stark prescribed Flexeril, Zanaflex, Ultram, Lortab and Neurontin for pain management. (R. 315, 328, 332.)

In a January 16, 2002 letter, Dr. Stark wrote that Plaintiff, who he had been following on a regular basis for fibromyalgia with a history of coexisting osteoarthritis, low back pain, and restless leg syndrome, was "medically disabled from performing activities of daily living of a vocation or avocation nature." (R. 310.)

On February 25, 2002, Dr. Stark completed a Physical Residual Functional Capacity Questionnaire in which he noted that Plaintiff had tenderness in his lower extremities and fibro points. (R. 307-09.) Dr. Stark opined that Plaintiff could stand for 15 minutes; sit and stand/walk less than two hours in an 8-hour day; that he would need unscheduled breaks during an 8-hour workday; that he would need a job that permits shifting positions at will from sitting, standing or walking; and that Plaintiff's impairments would likely produce "good days" and "bad days" and that he would likely be absent from work as a result of his impairments more than four days per month.   On May 2,

2003, Dr. Stark certified that the restrictions he placed upon Plaintiff in his February 25, 2002 Questionnaire were current and still applicable. (R. 298.)

On April 30, 2003, Dr. Stark completed a Fibromyalgia Residual Functional Capacity Questionnaire in which he found that Plaintiff met the American College of Rheumatology criteria for fibromyalgia, that Plaintiff had tender fibro points and the following symptoms: multiple tender points, nonrestorative sleep, chronic fatigue, morning stiffness, muscle weakness, subjective swelling, frequent and severe headaches, numbness and tingling, anxiety, panic attacks and depression. (R. 299-304.) Dr. Stark noted that Plaintiff was not a malingerer and that emotional factors contribute to the severity of Plaintiff's symptoms and functional limitations. Dr. Stark noted that Plaintiff had pain in his lumbosacral spine, cervical spine, thoracic spine, chest, bilateral shoulders, bilateral arms, bilateral hands/fingers, bilateral hips, bilateral legs and bilateral knees/ankles/feet. Dr. Stark noted that Plaintiff's pain is caused by changing weather, fatigue, movement/overuse, cold, stress and static position. He opined that Plaintiff's impairments are reasonably consistent with the symptoms and functional limitations described in this evaluation. He found that Plaintiff's experience of pain or other symptoms would interfere frequently with his attention and concentration and that he was incapable of even "low stress jobs." Dr. Stark opined that Plaintiff could walk less than one city block without rest or severe pain; sit for 20 minutes before needing to get up; stand for 15 minutes before needing to sit down, walk around, etc; and sit or stand/walk less than 2 hours in an 8-hour workday. Dr. Stark opined that Plaintiff would need to take daily unscheduled breaks during an 8-hour workday. Dr. Stark concluded that Plaintiff could rarely lift and carry less than 10 pounds; rarely look

down, look up and hold head in static position; and occasionally turn his head left or right.  Dr. Stark noted that Plaintiff has significant limitations in doing repetitive reaching, handling or fingering and found that he could grasp, turn and twist objects with both hands only 10% of an 8-hour workday; do fine manipulations with his fingers only 5% of an 8-hour workday and reach with his right arm 10% and his left arm 5% of an 8-hour workday.   Dr. Stark noted that Plaintiff's impairments would likely produce "good days" and "bad days" and that he would likely be absent from work more than four days per month.

At the October 26, 2005 hearing, Plaintiff testified that he has had constant severe pain in his legs and lower back for the past five years.  (R. 567-72.)  Plaintiff testified that he lays down most of the day, he cannot bend over without pain, he can sit for about 20-30 minutes, stand for about 15-20 minutes and walk 40-50 yards. (R. 574-80.)  Plaintiff testified that he does not do any housework, other than making a sandwich.  (R. 581.)  Plaintiff's wife helps him get dressed (R. 583), but he is able to bathe himself.  (R. 583.)   Plaintiff testified that he only sleeps about 3-4 hours per night, because he is constantly shifting position and he has restless leg syndrome.  (R. 583-84.)  Plaintiff testified that he has trouble holding things because his hands shake.  (R. 585.)

## IV.  **DISCUSSION**

Plaintiff raises three issues on appeal.  First, Plaintiff contends that the ALJ committed reversible error in failing to accord adequate weight to the opinions and assessment of Plaintiff's treating physician, Dr. Stark.   Second, Plaintiff argues that the ALJ failed to properly analyze Plaintiff's subjective complaints of pain on his ability to

9

work.[22] Third, Plaintiff argues that the ALJ improperly relied on the testimony of the Vocational Expert after posing a hypothetical question that did not adequately reflect all of Plaintiff's limitations.[23]

Turning to Plaintiff's first argument, Plaintiff argues that the ALJ failed to provide good cause for his rejection of the opinion of Dr. Stark.  Upon a review of the ALJ's decision, as well as an examination of the medical records at issue, the Court agrees that the ALJ failed to properly consider the opinion of Dr. Stark as a treating physician.

It is well-established that substantial or considerable weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless "good cause" is shown to the contrary.[24]  If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.[25]

---

[22] Although, Plaintiff makes two separate arguments in his Memorandum – i.e., (1) the ALJ erred in finding that Plaintiff was not entirely credible; and (2) the ALJ failed to properly analyze Plaintiff's subjective complaints of pain on his ability to work – the Court addresses the arguments together because they both relate to the ALJ's analysis of Plaintiff's subjective complaints.

[23] Based on the Court's conclusion that the ALJ failed to properly evaluate Dr. Stark's opinion and Plaintiff's subjective complaints of pain, the ALJ will be required to conduct a new RFC analysis on remand.  Accordingly, the Court need not address Plaintiff's final argument that the ALJ improperly relied upon the testimony of the Vocational Expert.

[24] Crawford v. Commissioner of Social Security, 363 F. 3d 1155, 1159 (11th Cir. 2004) (citing Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir.1997)) ("We have found 'good cause' to exist where the doctor's opinion was not bolstered by the evidence, or where the evidence supported a contrary finding. We have also found good cause where the doctors' opinions were conclusory or inconsistent with their medical records."). See also Edwards v. Sullivan, 937 F.2d 580, 583-584 (11th Cir. 1991); Sabo v. Commissioner of Social Security, 955 F. Supp. 1456, 1462 (M.D. Fla.1996); 20 C.F.R. § 404.1527(d).

[25] 20 C.F.R. § 404.1527(d)(2).

The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory.[26]  Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.[27]

When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record a whole; (5) specialization in the medical issues at issue; and (6) other factors which tend to support or contradict the opinion.[28]  However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.[29]

Here, the ALJ's error relates to his failure to understand the nature of fibromyalgia.  A diagnosis of fibromyalgia - literally meaning "pain in the muscles and the fibrous connective joints (the ligaments and tendons)" - depends mostly on a person's own subjective reports of symptoms, namely pain.[30]  There are no laboratory

---

[26] Edwards, 937 F.2d at 584 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements).

[27] Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir.1986); see also Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir.1987).

[28] 20 C.F.R. § 404.1527(d).

[29] Wilson v. Heckler, 734 F.2d 513, 518 (11th Cir.1984); see also 20 C.F.R. § 404.1527(d)(2).

[30] Stewart v. Apfel, 2000 U.S. App. LEXIS 33214 (11th Cir. 2000); see also Sarchet v. Chater, 78 F.3d 305, 306 (7th Cir. 1996) (Judge Posner stated that "of greatest importance to disability law, [fibromyalgia's] symptoms are entirely subjective" and that "[t]here are no laboratory tests for the presence
(continued...)

tests for the "presence or severity of fibromyalgia."[31] Individuals with fibromyalgia face symptoms such as "pain all over," fatigue, disturbed sleep, stiffness, and multiple tender points throughout the body.[32] Indeed, for those reasons, the Eleventh Circuit has recognized that "a treating physician's determination that a patient is disabled due to fibromyalgia is even more valuable because there are no objective signs of severity and the physician must interpret the data for the reader."[33]

In according Dr. Stark's opinion little weight, the ALJ explained:

> The undersigned finds that Dr. Stark's opinion that the claimant was disabled and his description of the claimant's physical limitations was not consistent with the objective medical record as a whole. Also it appears that Dr. Stark's assessment of the claimant's physical limitations was based partially on the subjective statements and complaints made by the claimant.

While a treating physician may state that a claimant is "disabled" or "unable to work" the agency will nonetheless determine disability based on the medical findings and other evidence.[34] Indeed, the ultimate determination as to whether a claimant is disabled is reserved for the Commissioner.[35] As such, the ALJ had good cause for discounting Dr. Stark's opinion in his January 16, 2002 letter that Plaintiff was "medically disabled."

---

[30](...continued)
or severity of fibromyalgia.").

[31] Stewart, 2000 U.S. App. LEXIS 33214 at *8 (quoting Sarchet, 78 F.2d at 306.)

[32] Sarchet, 78 F.3d at 306.

[33] Stewart, 2000 U.S. App. LEXIS 33214 at *9.

[34] Bell v. Bowen, 796 F.2d 1350, (11th Cir. 1990).

[35] See 20 CFR §404.1527(e); Social Security Ruling 96-5p

However, the ALJ failed to articulate good cause for discounting Dr. Stark's February 2002 and April 2003 Evaluations regarding Plaintiff's functional limitations.

Here, the ALJ rejected Dr. Stark's opinion because "his description of the claimant's physical limitations was not consistent with the objective medical record as a whole." However, this explanation belies Dr. Stark's failure to understand the nature of fibromyalgia. As discussed above, the symptoms of fibromyalgia are entirely subjective and there are no laboratory tests for the presence or severity of the condition.[36] Dr. Stark examined Plaintiff on at least eighteen occasions and he consistently noted tender fibrositis points, fatigue, paraspinal tenderness, stiffness and non-restorative sleep – all of which are symptoms associated with fibromyalgia. (R. 312, 314, 316, 319, 321, 323, 324, 325, 327, 329, 331, 333, 335, 337, 340, 343, 344, 346). Dr. Stark also consistently prescribed Plaintiff pain medication. (R. 315, 328, 332.) Moreover, the ALJ failed to explain or even provide a clue as to how Dr. Stark's opinion was inconsistent with other record medical evidence.

The only other basis stated by the ALJ for rejecting Dr. Stark's opinion was that Dr. Stark's assessment of Plaintiff's physical limitation was "based partially on the subjective statements and complaints made by the claimant." Once again, this underscores Dr. Stark's failure to understand fibromyalgia. As discussed above, out of necessity, Dr. Stark's assessment must be based (at least in part) on Plaintiff's subjective complaints because the symptoms of fibromyalgia are entirely subjective and

---

[36] Stewart v. Apfel, 245 F.3d 793, (11th Cir. 2000); see also Sarchet v. Chater, 78 F.3d 305, 306 (7th Cir. 1996). While he does not point to any specific test results in regard to his discussion about Dr. Stark, the ALJ does mention in his Decision a number of test results (i.e., MRI, EMG/nerve conduction) – all of which showed minimal findings.

there are no laboratory tests for the presence or severity of the condition. Accordingly, the ALJ failed to articulate specific reasons supported by substantial evidence for his decision to discount the opinions of Dr. Stark.

Moreover, as a result of his failure to properly analyze Plaintiff's fibromyalgia, the ALJ necessarily failed to properly consider Plaintiff's subjective complaints of pain. If an ALJ decides not to credit a claimant's testimony about subjective complaints, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.[37] While an adequate credibility finding need not cite "particular phrases or formulations [...] broad findings that a claimant lacked credibility and could return to her past work alone are not enough to enable a court to conclude that the ALJ considered her medical condition as a whole."[38] A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.[39] However, a lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.[40]

In the instant case, while the ALJ mentioned some reasons for concluding that Plaintiff's subjective complaints of pain were not entirely credible,[41] the ALJ made this

---

[37] Foote, 67 F.3d at 1561-62; Jones v. Department of Health and Human Servs., 941 F.2d 1529, 1532 (11th Cir. 1991) (finding that articulated reasons must be based on substantial evidence).

[38] Foote at 1562-1563.

[39] Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987); MacGregor v. Bowen, 786 F.2d 1050, 1054 (11th Cir. 1986).

[40] Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982).

[41] The ALJ articulated several reasons for discrediting Plaintiff's complaints, including allegedly inconsistent medical records and evidence that Plaintiff only sought conservative and non-aggressive treatment, Plaintiff performed light household chores, prepared simple meals, and performed activities of
(continued...)

finding without a proper understanding of the nature of fibromyalgia. Indeed, as discussed above, the evaluation of the severity of fibromyalgia depends mostly on a person's own subjective reports of symptoms – namely pain. Accordingly, on remand the ALJ must reconsider Plaintiff's subjective complaints of pain based on the Court's discussion of fibromyalgia and conduct a further evaluation of Plaintiff's RFC, according appropriate weight to the opinion of Dr. Stark, Plaintiff's treating rheumatologist.

## V. CONCLUSION

In view of the foregoing, it is hereby **ORDERED** that the decision of the Commissioner is **REVERSED AND REMANDED** under sentence four of 42 U.S.C. § 405(g) to the Commissioner for the Administrative Law Judge to: (1) properly consider the opinion of Dr. Stark; (2) evaluate the subjective testimony of the Plaintiff and articulate an adequate credibility finding that is supported by substantial evidence; and (3) conduct any additional proceedings the Commissioner deems appropriate. The Clerk is directed to enter final judgment accordingly and close the file.

**IT IS SO ORDERED.**

**DONE AND ORDERED** in Ocala, Florida, on September 18, 2008.

GARY R. JONES
United States Magistrate Judge

Copies to:
　　All Counsel

---

[41](...continued)
daily living independently.